**THE WHITING–TURNER CONTRACTING COMPANY, Plaintiff,**

**v.**

**LOCAL UNION NO. 7, Boston Massachusetts International Association of Bridge, Structural and Ornamental Iron Workers, Defendant.**

No. CIV.A. 97–12449–MEL.

United States District Court,
D. Massachusetts.

July 29, 1998.

Ronald M. Jacobs, Stoneman, Chandler & Miller, Boston, MA, Eric Hemmendinger, Shawe & Rosenthal, Baltimore, MD, for Plaintiff.

Michael A. Feinberg, Feinberg, Charnas & Birmingham, Boston, MA, for Defendant.

LASKER, District Judge.

This case concerns the effectiveness of the Whiting–Turner Contracting Company's attempted repudiation of an alleged collective bargaining agreement between it and Local Union No. 7, International Association of Bridge, Structural and Ornamental Ironworkers, AFL–CIO.

## I.

Whiting–Turner, a Maryland-based corporation which performs work throughout the United States, was engaged in 1997 by Sun Microsystems to serve as construction manager for a project located in Burlington, Massachusetts.

Shortly thereafter, while Whiting–Turner was in the midst of soliciting and evaluating bids for work on the project, a Local 7 representative informed, or "reminded," Whiting–Turner of its obligation to honor a collective bargaining agreement which, among other things, bars it from subcontracting steel erection work to any contractor that is not signatory to the agreement. When Whiting–Turner questioned the existence of a collective bargaining agreement between it and Local 7, the union produced a copy of a 1966 agreement binding Whiting–Turner to the then current and any successive collective bargaining agreements between the union and two local multi-employer associations.

Local 7 maintains that the obligations created by this 1966 document continue today. The collective bargaining agreement referenced in the 1966 agreement contains a provision which automatically renews the contract annually unless notice of termination is given prior to its expiration. Neither Whiting–Turner nor Local 7 expressed a desire to terminate the agreement prior to the present dispute. Moreover, Local 7 asserts that it has continuously maintained successive collective bargaining agreements with the multi-employer associations named in the 1966 document and their successors.

Whiting–Turner contends that the 1966 agreement lacks the significance that the union accords it, and questions whether it was intended to be a collective bargaining agreement at all. To sidestep the complexities of litigating whether the 1966 agreement gives rise to any present obligations, the company wrote the union a letter repudiating "any and all alleged agreements or understandings" between it and Local 7 before on-site steel erection work on the Sun Microsystems project began.[1] In doing so, Whiting–Turner relied on the so-called "one-employee" unit rule, which allows an employer with one (or no) bargaining unit employee(s) to repudiate a collective bargaining agreement at any time.

Whiting–Turner has employed no members of Local 7 for at least 10 years, and, indeed, there is no evidence to show that the company has employed any Local 7 members since the job that led to the original agreement in 1966. Whiting–Turner has never been a member of the multi-employer associations with which the union has contracted. While Whiting–Turner did serve as construction manager on a Massachusetts project in 1994, it negotiated a separate Project Agreement with the Boston Building Trades Counsel for that job. Several contractors on that project employed members of Local 7, but Whiting–Turner did not.

Local 7 maintains that Whiting–Turner's "attempted" repudiation is unlawful and inef-

---

**1.** Whiting–Turner maintains that the 1966 document could not have been a collective bargaining agreement because the company was party to a General President's Agreement with Local 7's parent body, the International Association of Bridge, Structural and Ornamental Iron Workers, at the time it was signed. (Whiting–Turner repudiated the national agreement in 1985.) The Agreement established the parent body as "the sole and exclusive bargaining representative" for employees within its jurisdiction. Whiting–Turner contends that the national agreement takes precedence over the local agreement, and accordingly that the 1966 document was most likely intended merely to facilitate benefits contributions to locally administered funds. The company also argues that a collective bargaining agreement cannot sustain itself over a thirty-year period that includes no other contact, and that any relationship between it and the union had lapsed. Because, as explained below, Whiting–Turner's repudiation of the agreement is valid, there is no need to consider the effect of either time or the General President's Agreement on the 1966 document.

fective, and has filed a demand for arbitration of the subcontracting issue under the collective bargaining agreement. Whiting–Turner claims that whatever duty to arbitrate may have been imposed by the 1966 agreement, the company cannot be required to arbitrate a claim that arose, as did this one, after the agreement was repudiated.[2]

Both parties now move for summary judgment. Each seeks a declaration of whether Whiting–Turner is party to any collective bargaining agreement with Local 7, and whether the union's claim against Whiting–Turner is arbitrable. Because Whiting–Turner had the right to repudiate any existing agreement, the company's motion is granted, and the union's is denied.

### II.

The 1966 document is a "pre-hire agreement" authorized under § 8(f) of the National Labor Relations Act. Section 8(f) provides an exception to the general rule that an employer may not bargain with a union which does not represent a majority of its workforce—it allows employers engaged in the construction industry to reach· agreements with labor organizations whose majority status has not been established under the provisions of § 9 of the Act. 29 U.S.C. §§ 158(f), 159(a).

■ A pre-hire agreement, like a collective bargaining agreement established under § 9(a), is ordinarily enforceable throughout its term. *C.E.K. Indus. Mech. Contractors, Inc. v. NLRB*, 921 F.2d 350, 357 (1st Cir.1990)(adopting new NLRA rule that § 8(f) agreements are binding, but declining to enforce the rule retroactively). An employer may, however, repudiate a collective bargaining agreement, including a pre-hire agreement, at any time that it has no more than one employee in the appropriate bargaining unit. *See Laborers Health & Welfare Trust Fund v. Westlake Development*, 53 F.3d 979, 981–82 (9th Cir.1995); *Haas*

*Garage Door Co.*, 308 NLRB 1186, 1992 WL 277382 (1992).

■ The parties disagree as to whether in this case the appropriate bargaining unit to consider is that of the single employer or that of the multi-employer association whose union contract the individual employer has adopted. While Whiting–Turner maintains that it is entitled to repudiate any existing agreement because it has not employed any members of Local 7 for many years, the union insists that Whiting–Turner may not repudiate the agreement since the workforce of the multi-employer association, which it alleges is the appropriate bargaining unit, has continuously included members of Local 7.

Some historical background is critical for understanding and resolving the dispute between the parties. Before the NLRB's decision in *John Deklewa & Sons*, 282 NLRB 1375, 1987 WL 90249 (1987), *enforced*, 843 F.2d 770 (3d Cir.), *cert. denied*, 488 U.S. 889, 109 S.Ct. 222, 102 L.Ed.2d 213 (1988), a pre-hire agreement could be repudiated at any time unless the 8(f) agreement were found to have "converted" to a 9(a) agreement. Conversion occurred when the signatory union attained majority status among an appropriate unit of the signatory employer's employees. 1987 WL 90249, at *5. When a single employer joined a multi-employer association and adopted its collective bargaining agreement, its bargaining unit was said to have "merged" into the multi-employer unit, and the inquiry into majority status was conducted as to the multi-employer unit. 1987 WL 90249, at *6.

*Deklewa* changed all that. There, the NLRB held that pre-hire agreements are enforceable throughout their terms, and may be repudiated only upon expiration. 1987 WL 90249, at *5. The Board set forth broadly applicable principles for § 8(f) cases, and stated that it was "abandon[ing] the so-called conversion doctrine, and [modifying] relevant unit scope rules in 8(f) cases." *Id. Deklewa*

---

**2.** Although the papers indicate some dispute as to when the subcontracting claim arose, that appears to stem from the union's not having known when the contract was awarded. Whiting–Turner has since submitted undisputed evidence that the company did not sign the contract for steel erection work until July 24, 1997, and that work under the contract did not begin until September 8, 1997. Both events occurred after the July 17th repudiation.

allows a § 8(f) agreement to be terminated during its term only if the employees vote to reject the union as their bargaining representative. *Id.* at *14. In such a vote, *Deklewa* provides, "single employer units [rather than multi-employer units] will normally be appropriate." *Id.*

Local 7 argues that *Deklewa*'s abandonment of the conversion doctrine, and concomitant rejection of the multi-employer unit, is appropriate only when the employees' representational rights are at stake, but is inapplicable to an employer's attempt to repudiate a § 8(f) agreement. The union purports to find support for its position in *Deklewa*'s rejection of the employer's argument that it was entitled to repudiate the pre-hire agreement at issue under the one-employee unit rule. However, the underlying rationale for rejecting the attempted repudiation in *Deklewa* is *not* that merger is appropriate in this context, but that the one-employee rule is inapplicable to pre-hire agreements because such agreements contemplate fluctuating workforces. *Id.* at *20 n. 62 ("An 8(f) contract is enforceable throughout its term, although at a given time there may not be any employees to which the contract would apply.")

The Board has since qualified *Deklewa*'s statement about the inapplicability of the one-employee unit rule to pre-hire agreements by limiting it to construction employers whose fluctuating workforces temporarily lack bargaining unit employees as opposed to those who had employed no more than one bargaining unit employee for longer periods of time. *See Garman Constr. Co.*, 287 NLRB 88, 1987 WL 90128, at *3 n. 8 (1987). Numerous NLRB decisions since *Deklewa* have found that the one-employee unit rule is applicable to § 8(f) agreements, and have applied the rule with reference to the individual employer's workforce rather than that of the multi-employer association. *E.g., Wilson & Sons Heating & Plumbing*, 302 NLRB 802, 1991 WL 150540 (1991); *Searls Refrigeration Co.*, 297 NLRB 133, 1989 WL 224413 (1989); *Stack Electric, Inc.*, 290 NLRB 575, 1988 WL 213985 (1988).

In *Garman*, as in this case, the employer signed a memorandum agreement binding it to a collective bargaining agreement between the union and a multi-employer association which included an automatic renewal provision. *Id.* at *3 n. 6. After having employed only one bargaining unit member over the next three years, the company repudiated the contract. The NLRB looked only at the individual employer's workforce in finding the repudiation lawful under the one-employee unit rule.

Local 7 maintains that the decisions on which Whiting–Turner relies are all distinguishable in that the single-employer units at issue there had not merged into multi-employer units, while here, merger has occurred, and the appropriate bargaining unit is that of the multi-employer association. However, all of the cases the union cites to support its argument that merger should be found here were decided before *Deklewa* was issued, and are not persuasive in light of *Deklewa*'s rejection of the consolidation and merger doctrines.

While the union is correct that the Board in *Garman* adopted the Administrative Law Judge's finding that the single-employer unit had not merged into the multi-employer unit, this hardly supports its argument since the relationship between Whiting–Turner and the multi-employer association in this case is no closer than the equivalent relationship in *Garman*. More importantly, only one member of the *Garman* panel indicated that the merger question was relevant to its decision. *Garman*, 1987 WL 90128, at *3 n. 7 ("Member Stephens notes that the [principle that the appropriate unit in an 8(f) case is a single-employer unit] actually refers to the unit that will normally be regarded as appropriate for the purpose of processing election petitions ... It is conceivable that [this principle] would not necessarily govern all determinations of the unit to which an employer was bound pursuant to its signing of a collective bargaining agreement.") None of the later decisions applying the one-employee unit rule to § 8(f) agreements has expressed similar reservations, and the Ninth Circuit has recently explained that the same standard should determine the appropriate bargaining unit in decertification and repudiation cases. *Laborers Health & Welfare Trust*

*Fund v. Westlake Development,* 53 F.3d 979, 982 (9th Cir.1995)("Since the one-employee unit rule essentially dissolves the bargaining unit ... it seems appropriate to treat repudiation under the single employee unit rule as equivalent to a repudiation resulting from decertification of the bargaining representative.") (citation omitted).

Post-*Deklewa* decisions have consistently applied the one-employee unit rule to pre-hire agreements by looking only at a single employer's workforce regardless of its relationship with a multi-employer association. In *Stack Electric,* the NLRB stated that "the Board has abandoned the conversion/merger doctrines," and explicitly overruled a line of cases holding that where an employer delegates bargaining authority to a multi-employer association, the appropriate bargaining unit is that of the multi-employer association. 1988 WL 213985, at 4, 5 n. 3. Although the Board found it appropriate to consider the multi-employer association for jurisdictional purposes, it held that the appropriate unit for purposes of the one-employee unit rule is that of the individual employer's employees. *Id.* at *4. In *Haas Garage Door Co.,* 308 NLRB 1186, 1992 WL 277382, at *2 (1992), the NLRB allowed an employer whose collective bargaining agreement with the union arose from its membership in a multi-employer association to repudiate the contract since the employer itself had no employees doing unit work.

The facts in *Searls* are very similar to those in the present case. There, the employer signed an agreement binding it to the then current and successive collective bargaining agreements between a local union and a multi-employer association. 1989 WL 224413, at *2. When the employer bid on a job within the geographical jurisdiction of the union, after having done no work there for nearly two years, the employer contended that it was not bound by the current collective bargaining agreement and gave "notice of repudiation of any contractual obligation." *Id.* at *3. The NLRB held that "[t]he two year hiatus during which [the employer] performed no work whatsoever in [the local union's] jurisdiction is ample proof of the absence of any intermittent or even sporadic

employment of more than one unit employee," and found the repudiation to be lawful. *Id.* at *5. The Board recognized the individual employer's employees as the appropriate bargaining unit without question.

Similarly, here, Whiting–Turner has employed no members of Local 7 for at least ten years. Since the appropriate bargaining unit is that of Whiting–Turner itself rather than that of the multi-employer association, Whiting–Turner is entitled to repudiate any existing agreement between it and Local 7 under the one-employee unit rule.

\*   \*   \*   \*   \*   \*

Whiting–Turner's motion for summary judgment is granted, and Local 7's motion is denied. Any pre-hire or other collective bargaining agreement in existence between Whiting–Turner and Local 7 was terminated by Whiting–Turner's July 16, 1997 notice of repudiation. Accordingly, there is no basis for arbitrating any dispute arising from conduct that occurred after that date, including the execution of, and work done under, the subcontract for steel erection that is the basis for Local 7's demand for arbitration in the present case.